ISTHMIAN S. S. CO. OF DELAWARE v. OLIVIERI et al.

No. 14111.

United States Court of Appeals
Fifth Circuit.

March 11, 1953.

Bentley G. Byrnes, Edward A. Wallace, Robert G. Hughes and Frank T. Doyle, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment in favor of the appellee, Patrick Olivieri, against the appellant, on account of personal injuries suffered by Olivieri. The question is whether workmen's compensation was Olivieri's exclusive remedy under pertinent Louisiana statutes set out in the margin.[1]

Appellant contracted with Lehon's Protection Police Service, Inc. to furnish watchmen or guards as requested by appellant for the protection of outgoing and incoming cargo at its wharves. The guards were paid by and under the supervision and orders of Lehon's, and that company was responsible to appellant for any pilfering that took place. While Olivieri was on duty as such a guard at appellant's Galvez Street Wharf, one of appellant's employees permitted some cartons or crates to fall on

S. Paul Weiss, Jr., Weiss & Weiss, New Orleans, La., for appellant.

1. Section 6 of Act 20 of 1914 as amended, LSA–R.S. 23:1061 to 23:1063, provides:

"1. Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent, any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to [his] employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

"2. Where the principal is liable to pay compensation under this section he shall be entitled to indemnity from any person who independently of this section would have been liable to pay compensation to the employee or his dependent and shall have a cause of action therefor.

"3. Nothing in this section shall be construed as preventing an employee or his dependent from recovering compensation under this act from the contractor instead of from the principal.

"4. A principal contractor, when sued by an employee of a subcontractor or his dependent, shall have the right to call that subcontractor or any intermediate contractor or contractors as a co-defendant, and the principal contractor shall be entitled to indemnity from his subcontractor for compensation payments paid by the principal contractor on account of an accidental injury to the employee of the subcontractor."

Section 34 of Act 20 of 1914 as amended, LSA–R.S. 23:1032, provides:

"the rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this act shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, relations, or otherwise, on account of such injury."

**494**

his leg causing the injuries for which the judgment was rendered. Appellant contends that the work of watching and guarding the cargo was a part of appellant's trade, business or occupation and hence that Olivieri should be restricted to the recovery of compensation.

The jury answered a specific interrogatory as follows: "2. Were the duties performed by the plaintiff normally part of the trade, business or occupation of the Isthmian Steamship Company? *no*"

The district judge was of the opinion: "There is substantial evidence in the record to support the jury's finding. Certainly it is a question on which reasonable men might differ."

 After a careful review of the record, we are constrained to disagree. The court, in submitting the question to the jury, failed to give any instructions as to the tests to be applied in determining what duties would be "normally part of the trade, business or occupation" of the appellant. Without knowing the standards by which the jury considered and decided that question, its verdict carries little weight. The question involves a decision upon issues of both law and fact or, as often said, upon a mixed question of law and fact.

On the law, the Louisiana cases are of course controlling. Those cases have settled that the compensation statute is to be liberally construed so as to include all services that can reasonably be said to be within the statute not only when the injured person seeks its protection, but when he attempts to have himself excluded from the coverage of the act. The decisive factors are the nature of the employee's work and of the principal's trade, business, or occupation. Unless the work is of such a special or separate character as would not ordinarily or appropriately be performed by the principal employer's own employees in the prosecution of its business or as an essential part thereof, it is a part of the principal's trade, business or occupation. Dandridge v. Fidelity & Casualty Co., La. App., 192 So. 887, 891; Thibodaux v. Sun Oil Company, La.App., 40 So.2d 761, 764, 765, affirmed 218 La. 453, 49 So.2d 852; Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137, 144.

While there was evidence that some steamship lines guarded their own cargo while others contracted for watchman service, all of the evidence established what is probably a matter of common knowledge, namely, that every carrier must take precautions to guard its cargo. That is an indispensable and usual part of the trade, business or occupation of every steamship line. Appropriately the service may be performed by the principal's own employees, and in many instances that is the practice. We conclude that under the Louisiana law as construed by its courts, and under the undisputed evidence, workmen's compensation was Olivieri's exclusive remedy. The court erred in denying the defendant's motion for a directed verdict, and the judgment is therefore

Reversed.