658 So.2d 715 (1995)
Roger KIRKLAND, Plaintiff-Appellant-Appellee,
v.
RIVERWOOD INTERNATIONAL USA, INC., Defendant-Appellee-Appellant.
No. 26741-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 1995.
*717 Graydon K. Kitchens, III, Minden, for Roger Kirkland.
Charles S. Smith, Monroe, John M. Frazier, Shreveport, for Riverwood USA, Inc.
John M. Frazier, Shreveport, for Insurance Company of North America.
Before MARVIN, NORRIS, LINDSAY, HIGHTOWER and BROWN, JJ.
BROWN, Judge.
Plaintiff filed this tort action against the owner of a paper products mill to recover for injuries sustained as a contract laborer. Claiming tort immunity under Louisiana's Workers' Compensation law, defendant was granted summary judgment. Plaintiff and his intervening workers' compensation provider appeal. For the reasons assigned below, we reverse and remand.

FACTS
Defendant, Riverwood International USA, Inc. ("Riverwood"), is engaged in the production of paper products at its mill in West Monroe, Louisiana. In 1991, Riverwood began a renovation program to modernize its facilities. One phase of this program called for an overhaul of two identical systems used in the production and recycling of white liquor, which is used in the processing of wood chips for making paper. Riverwood contracted with Republic Contractors ("Republic") for the renovation of the white liquor systems. Plaintiff, Roger Kirkland, who was employed by Republic, worked in a four-man crew at the Riverwood mill.
The mill was shut down when work started on the first of two white liquor systems. When work on the first system was completed, the mill resumed production. Thereafter, renovation work began on the second system. Plaintiff was assisting in replacing a lime conveyor when he lost his footing, fell approximately 30 feet and rolled into a white liquor/alkali mixture that had accumulated on the ground. Plaintiff broke two vertebrae in the fall and suffered severe burns resulting from his contact with the spilled chemical.
Plaintiff filed suit against Riverwood and its liability insurer alleging that Riverwood was strictly liable for his injuries, or alternatively, that Riverwood's negligence caused the accident. Insurance Company of North America, plaintiff's employer's workers' compensation insurer, intervened to recover benefits paid to plaintiff. Riverwood moved for summary judgment arguing that the renovation work performed by plaintiff was integrally related to Riverwood's trade, business or occupation. The trial court agreed and granted defendant's motion. Plaintiff and intervenor appeal.

LAW

Summary Judgment
Appellate courts review summary judgments de novo, using the same criteria applied by the trial court in determining whether summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). A motion for summary judgment is appropriately granted only when the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show that there is no genuine issue as to a material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966. In determining whether all material issues have in fact been disposed of, any reasonable doubt is to be resolved against the granting of summary judgment and in favor of a trial on the merits. Penalber v. Blount, 550 So.2d 577 (La.1989).
The mover bears the burden of establishing that there are no genuine issues of material fact. A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Penalber, supra. Materiality is also a relative concept defined and circumscribed by the substantive law applicable to the case. Accordingly, we begin our analysis with a review of the law applicable to Riverwood's defense.

Statutory Employer Doctrine
Under Louisiana workers' compensation law, a principal (Riverwood), who contracts *718 with another (Republic) to perform work that is part of the principal's "trade, business or occupation", is liable to pay workers' compensation benefits to any employee of the contractor who is injured while performing such work. LSA-R.S. 23:1061. In such instances, the principal is commonly referred to as a statutory employer. Because of the exclusiveness of the compensation remedy, statutory employers are afforded immunity from tort liability for work-related injuries suffered by the employees of their various contractors even though they never actually pay any workers' compensation benefits. LSA-R.S. 23:1032.
The concept of statutory employer tort immunity has long been part of our workers' compensation law. It was designed to prevent the avoidance of responsibility under the workers' compensation law by a principal who interposes an intermediary who is typically insolvent and uninsured to perform work that is part of the principal's trade, business or occupation. The terms by which the status of statutory employer is recognized were crafted by our courts through a series of opinions spanning nearly forty years. In response to a perceived restriction on this defense pronounced in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), the legislature amended LSA-R.S. 23:1061 in 1989. This amendment, however, did not provide an affirmative statement regarding the test for statutory employer status. To discern the appropriate standard, we must revisit earlier jurisprudence, consider the analyses therein and the impact of the amendments made to LSA-R.S. 23:1061.
The treatment of the relevant substantive law was authoritatively addressed for the first time in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950). Therein, a defendant oil producer contracted out various work related to the drilling and reworking of one of its wells. One contract laborer was killed and another injured while working to retrieve equipment that had fallen into the well shaft. When plaintiff filed a suit for tort damages, defendant relied on the statutory employer defense and the exclusivity of the compensation remedy. In affirming the judgment in favor of defendant, the court stated that the contractors:
were performing services in connection with work which was part of the business, trade or occupation of Sun Oil Company, or so closely related thereto as to become an integral part thereof.
Thibodaux, supra at 854.
The "integral relation" test, as formulated in Thibodaux, was a loosely defined factual inquiry that produced inconsistent and often illogical results since almost everything could be said to be integrally related to the principal's trade, business or occupation. During the years that followed, courts attempted to lend structure to this analysis by identifying relevant factors for the assessment of statutory employer status. At the same time, the evolving analysis illustrated a shift from the liberal application of statutory employer tort immunity to a more restrictive approach. These efforts culminated in Berry v. Holston Well Service, Inc., supra, wherein the Louisiana Supreme Court announced a three-tiered analysis. To be classified as a statutory employer under the Berry analysis, the principal must clear three hurdles:
(1) Is the contract work specialized? Specialized work is, as a matter of law, not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees.
(2) Where the contract work is non-specialized, the court must compare the contract work with the principal's trade, business or occupation. At this level the court should make the following inquiries:
(i) Is the contract work routine and customary? Is it regular and predictable?
(ii) Does the principal have the equipment and personnel capable of performing the work?
(iii) What is the practice of the industry? Do industry participants normally contract out this type of work or do they have their own employees perform the work?
(3) Was the principal engaged in the work at the time of the alleged accident?
*719 As stated by Alston Johnson in his analysis of the Berry decision:
The court found the roots of its three-level inquiry in the appellate cases over the years so there really is nothing new in the substance of the test; rather, there is a restatement of existing law.
W. Malone & A. Johnson, Workers' Compensation Law and Practice, § 364 at 183, 14 La.Civil Law Treatise (1994). The new test, however, did contain two elements, parts one and three, that were by themselves potentially dispositive of a statutory employment inquiry. As a result, the Berry three-tiered test was often applied in a rigid, mechanical fashion without due consideration for other facts and circumstances relevant to a determination of statutory employer status. See Bourgeois v. Puerto Rican Marine Management, Inc., 589 So.2d 1226 (La.App. 4th Cir. 1991), writ denied, 592 So.2d 1299 (La.1992); Fontana v. Hibernia National Bank, 568 So.2d 569 (La.App. 4th Cir.1990); Ardoin v. BASF Wyandotte Corporation, 525 So.2d 684 (La.App. 1st Cir.1988); Chauvin v. Gulf Coast Minerals, Inc., 509 So.2d 622 (La.App. 3d Cir.1987), writ denied, 512 So.2d 1175 (La.1987).
In response to the Berry decision and its subsequent application, the Louisiana legislature amended LSA-R.S. 23:1061 in 1989 by adding the following sentence:
The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
The amendment was clearly a direct attack on the rigid test and determinative factors announced in Berry. The amendment, however, was silent concerning the appropriate test for statutory employment and the continuing role, if any, of the fact based inquiries spelled out in the Berry decision.
While addressing the retroactivity of the 1989 amendment, several Louisiana appellate courts suggested in dicta that it overruled Berry, reinstated the integral relation test and marked a return to a liberal standard for granting principals tort immunity. Carter v. Chevron Chemical Company, 593 So.2d 942 (La.App. 4th Cir.1992), writ denied, 596 So.2d 211 (La.1992); Frith v. American Motorists Insurance Company, 613 So.2d 249 (La.App. 1st Cir.1992), writ denied, 617 So.2d 932 (La.1993); Hutchins v. Hill Petroleum Company, 609 So.2d 312 (La.App. 3d Cir. 1992). The federal Fifth Circuit Court of Appeal, sitting in diversity, addressed the issue directly and concluded that the Berry factors could no longer be considered by themselves, nor in conjunction with other factors. Rather, the appropriate test for statutory employment was the integral relation test. Thompson v. Georgia Pacific Corp., 993 F.2d 1166 (5th Cir.1993); Salsbury v. Hood Industries, Inc., 982 F.2d 912 (5th Cir.1993). This court arrived at the same conclusion in Moore v. Crystal Oil Co., 626 So.2d 792 (La.App. 2d Cir.1993) (Brown, J. dissenting):
[W]e find that Berry, supra, and the factors enunciated therein are no longer the appropriate test for determining whether a statutory employment relationship exists. The current criteria for making such a determination is the "integral relation" test of Thibodaux v. Sun Oil Company, supra.

Moore, supra at 796.
In Moore, a contract laborer who provided welding services brought suit against a principal oil company for injuries sustained in an explosion. The trial court granted summary judgment in favor of the principal. Applying the integral relation test, this court affirmed. Relying on the pronouncement in Moore, summary judgments in favor of principals were affirmed in at least two subsequent instances. Vickers v. Cajun Concrete Services, Inc., 93-CA-1537 (La.App. 4th Cir. 03/15/94), 634 So.2d 68; Hanks v. Shell Oil Co., 93-CA-737 (La.App. 5th Cir. 01/25/94), 631 So.2d 1189.
In Moore and the cases relying upon it, the supreme court reversed and remanded for further proceedings. Vickers v. Cajun Concrete *720 Services, Inc., 94-C-0930 (La. 06/03/94), 637 So.2d 487; Hanks v. Shell Oil Co., 94-C-0483 (La. 04/04/94), 635 So.2d 1118; Moore v. Crystal Oil Company, 93-C-3103 (La. 02/25/94), 632 So.2d 758. In Moore and Hanks, the reversal was necessitated by the existence of material facts as to whether the contract work was part of the principal's trade, business or occupation. While the court announced no reasons for the reversal of Vickers, the implication is clear that the existence of material facts precluded summary judgment. Equally clear is the absence of any mention of the "integral relation" test.
The integral relation test was applied by the appellate courts in each of the three cases mentioned above and predictably led to the conclusion that the work of the contractors was integrally related to the business, trade or occupation of the principal. And yet, the integral relation test in each instance was found by our supreme court to have failed to consider material facts. The supreme court appears to continue to recognize the conclusory nature of the integral relation test and has employed an analysis based on the individual facts of each case. Thus, whether the integral relation test is the appropriate standard for assessing statutory employment is questionable.
The legislature has provided no guidance concerning the appropriate test for statutory employment. The amendment of LSA-R.S. 23:1061 was clearly designed to dispense with the rigid test announced in Berry. We are not convinced, however, that the amendment was intended to dispense with the fact-based inquiry employed immediately prior to the Berry decision. One of the avowed purposes for the 1989 amendment was "to try to bring the law back to its posture before the Berry decision was made...." Minutes of the House Committee on Labor and Industrial Relations, May 26, 1989 at 16. We find no reason to conclude that this meant a return to the law as announced in 1950 in Thibodaux. Rather, the amendment overruled the mechanical, three-tiered test in Berry and marked a return to the pre-Berry analysis of the total circumstances of each particular case.
Pre-Berry decisions made it clear that when making a trade, business or occupation determination, "... no single factor is determinative. Courts must look to the particular facts and circumstances of each individual case in order to determine whether a particular activity falls within the scope of the principal's trade, business or occupation." Rowe v. Northwestern National Insurance Co., 471 So.2d 226 (La.1985); Butler v. Home Insurance Company, 448 So.2d 801 (La. App. 2d Cir.1984), writ denied, 450 So.2d 954 (La.1984), reversed in part by Berry v. Holston Well Service, Inc., supra at 939, n. 4.
A "totality of the circumstances" approach involves consideration on a case-by-case basis of the various factors discussed by pre-Berry courts. No single factor is determinative and the presence of one factor may compensate for the lack of another. Among the factors to be considered in making a trade, business or occupation determination are:
(1) Was the work specialized or non-specialized?

Teague v. Sawyer Drilling Company, 499 So.2d 127 (La.App. 2d Cir.1986); Chauvin v. Gulf Coast Minerals Inc., 509 So.2d 622 (La.App. 3d Cir.1987), writ denied 512 So.2d 1175 (La.1987); Cantrell v. BASF Wyandotte, 506 So.2d 793 (La.App. 1st Cir. 1987), writ denied, 512 So.2d 1178 (La. 1987); Roberts v. Amstar Corporation, 496 So.2d 1146 (La.App. 4th Cir.1986); Palmer v. Loyola University, 496 So.2d 421 (La. App. 4th Cir.1986), writ denied 501 So.2d 207 (La.1987).
(2) Was the contract work routine, customary, ordinary or unusual?

Rowe v. Northwestern National Insurance Co., supra; Berry v. Brown & Root, Inc., 595 So.2d 767 (La.App. 4th Cir.1992); Poirrier v. Cajun Insulation Inc., 459 So.2d 737 (La.App. 4th Cir.1984); Butler v. Home Insurance Co., supra.

(3) Does the defendant customarily have his own employees perform the work?

Lewis v. Exxon Corporation, 441 So.2d 192 (La.1983), on remand, 451 So.2d 24 (La. App. 1st Cir.1984); Teague v. Sawyer Drilling Co., supra.

*721 (4) Does the defendant have the equipment and personnel capable of performing the contract work?

Lewis v. Exxon Corporation, supra; Teague v. Sawyer Drilling Co., supra; Berry v. Brown & Root, Inc., supra; Stine v. Creel, 417 So.2d 1243 (La.App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982).
(5) What is the practice in the industry? Do industry participants normally contract out this type of work, or do they have their own employees perform the work?

Rowe v. Northwestern National Insurance Co., supra; Barnes v. Sun Oil Company, 362 So.2d 761 (La.1978); Berry v. Brown & Root, Inc., supra; Bonstill v. Goldsberry Operating Co., 478 So.2d 729 (La.App. 3d Cir.1985); Calais v. Exxon Pipeline Co., 430 So.2d 321 (La.App. 3d Cir.1983).
(6) Was the defendant engaged in the contract work at the time of the incident?

Rowe v. Northwestern National Insurance Co., supra; Lewis v. Exxon Corporation, supra; Roberts v. Amstar Corporation, supra; Palmer v. Loyola University, supra.

DISCUSSION
The trial court offered no written reasons for judgment, stating only that the law and evidence were in favor of summary judgment. Our review of the record leads us to conclude otherwise.
When the statutory employer status is asserted as a defense to a tort claim, defendant has the burden to prove entitlement to the immunity. Rowe v. Northwestern National Insurance Co., supra. In support of its motion, Riverwood argued that Moore was controlling and that the integral relation test applied. Riverwood then argued that the replacement of the old lime conveyor was essential for the efficient and safe functioning of the plant; and, consequently, that the work performed by plaintiff was integrally related to Riverwood's trade, business or occupation. In view of our analysis of the statutory employer defense and the standard for recognizing this unique status, we must conclude that the granting of summary judgment was predicated upon the wrong test.
Summary judgment is proper only where there are no issues of material fact and the mover is entitled to judgment as a matter of law. Defendant's showing does not adequately address all the factual concerns as spelled out above. Furthermore, in response to defendant's motion, plaintiff noted the specialized nature of the work performed and argued that the work performed entailed a full-fledged renovation, not routine maintenance. While these factors alone are not determinative, they do raise issues of material fact that preclude summary judgment.

CONCLUSION
Based upon the facts and circumstances of this case, we conclude that the trial court applied the wrong standard in assessing and recognizing Riverwood's statutory employer defense. The pleadings, depositions and affidavits relied upon by defendant fail to show that there is no genuine issue of material fact when considered in light of the appropriate test for statutory employment. Accordingly, we reverse, remand and assess costs to defendant.
REVERSED AND REMANDED.
HIGHTOWER, J., dissents with written reasons.
LINDSAY, J., dissents for the reasons assigned by HIGHTOWER, J.
HIGHTOWER, Judge, dissenting.
Although reversed on material-fact grounds, Moore v. Crystal Oil Co., supra, correctly held that the integral relation test controls. Furthermore, I strongly disagree with the majority's "appropriate test for statutory employment" in the case sub judice. Such an analysis disregards the plain language of the 1989 amendment to LSA-R.S. 23:1061, reinjects factors that the Legislature expressly repudiated, and would subject statutory employers to a merits trial in virtually every case.
Neither am I prepared to conclude that the supreme court will, without exception, *722 reverse all summary judgments sustaining a statutory employer defense.
I respectfully dissent.